## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

**JESSE KRIMES, on Behalf of Himself and
All Others Similarly Situated,**

                    **Plaintiff,**

        **vs.**

**JPMORGAN CHASE BANK, N.A., and
DOES 1-10,**

                    **Defendants.**

**No. 2:15-cv-05087**

---

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

---

## TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND .................................................................................................. 2

    A.  Case Overview ......................................................................................... 2

    B.  Settlement Negotiations ........................................................................... 3

III.  SUMMARY OF PROPOSED SETTLEMENT TERMS ...................................... 4

    A.  The Settlement Class................................................................................ 5

    B.  Monetary Relief ....................................................................................... 5

    C.  Class Release ........................................................................................... 6

    D.  The Notice Program and Settlement Administration................................ 7

        1.  Mailed Notice.................................................................................. 8

        2.  Publication Notice........................................................................... 8

        3.  The Settlement Website and the Toll-Free Settlement Phone Line ... 8

        4.  Settlement Administration ............................................................... 9

        5.  Service Award, Attorneys' Fees, and Costs...................................... 9

IV.  THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD..... 10

    A.  The Settlement Was The Result of Arms' Length, Informed Negotiations ............... 11

    B.  There Was Discovery............................................................................... 11

    C.  Counsel Are Experienced In Similar Litigation....................................... 11

    D.  The Settlement Is Within The Range of Reasonableness .......................... 12

V.  THE SETTLEMENT SATISFIES RULES 23(a) AND 23(b) ........................................... 14

    A.  The Settlement Satisfies Rule 23(a)........................................................ 14

        1.  The Class Is Numerous .................................................................. 14

        2.  Common Questions of Fact and Law Exist ..................................... 15

        3.  Plaintiff's Claims Are Typical ....................................................... 15

        4.  The Adequacy Requirement Is Met ................................................ 16

        5.  The Settlement Satisfies Rule 23(b)(3)........................................... 16

VI.  THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED.......... 18

VII.  THE PROPOSED SCHEDULE OF EVENTS .................................................... 19

VIII.  CONCLUSION................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................... 17

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ........................................................................................... 15

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)..................................................................................................... 18

*Esslinger v. HSBC Bank Nevada, N.A.,*
    Civ. A. No. 10-3213, 2012 U.S. Dist. LEXIS 165773 (E.D. Pa. Nov. 2012).......................... 19

*Gen'l Tel. Co. of S.W. v. Falcon,*
    457 U.S. 147 (1982)..................................................................................................... 16

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)........................................................................................ 12

*Glaberson v. Comcast Corp.,*
    Civ. A. No. 03-6604, 2014 U.S. Dist. LEXIS 172040 (E.D. Pa. Dec. 12, 2014) .............. 10, 18

*Hanlon v. Palace Enmt. Holdings, LLC,*
    Civ. A. No. 11-987, 2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012).......................... 19

*In re Community Bank of N. Va.,*
    418 F.3d 277 (3d Cir. 2005)........................................................................................ 17

*In re Foundation for New Era Philanthropy Litig.,*
    175 F.R.D. 202 (E.D. Pa. 1997).................................................................................. 13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995).......................................................................................... 10

*In re Ins. Brokerage Antitrust Litig.,*
    579 F.3d 241 (3d Cir. 2009)........................................................................................ 14

*In re NFL Players Concussion Injury Litig.,*
    No. 15-2206, *et seq.*, 2016 U.S. App. LEXIS 6908 (3d Cir. Apr. 18, 2016).............. 14, 15, 17

*In re Pet Food Prods. Liab. Litig.,*
    629 F.3d 333 (3d Cir. 2010)........................................................................................ 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998)........................................................................................ 15

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004)................................................................................... 10, 14

*Mack Trucks, Inc. v. Int'l Union, UAW,*
    Civ. A. No. 07-3737, 2011 U.S. Dist. LEXIS 51514 (E.D. Pa. May 12, 2011) ...................... 10

*Sheib v. JPMorgan Chase & Co.*,
    No. 16-cv-2880 (E.D.N.Y.) ................................................................................ 17

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................... 16

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
    758 F.2d 86 (3d Cir. 1985) ................................................................................. 19

## **Other Authorities**

*Manual for Complex Litigation (Fourth)* § 21.61-21.62 ......................................... 10

*Newberg on Class Actions* § 11.41 (4th ed. 2002) .................................................. 11

## **Rules**

Fed. R. Civ. P. 23(a) ...................................................................................... 14, 16

Fed. R. Civ. P. 23(b)(3) ......................................................................................... 17

Fed. R. Civ. P. 23(e) .............................................................................................. 10

## I.   <u>INTRODUCTION</u>

Plaintiff Jesse Krimes, by and through the undersigned counsel, respectfully moves for Preliminary Approval of the proposed Settlement Agreement attached hereto as Exhibit A (the "Settlement Agreement"), and certification of the Settlement Class, which will resolve Plaintiff's and all proposed settlement class members' ("Settlement Class Members") claims in this action. Defendant JPMorgan Chase Bank, N.A. ("Chase") does not oppose this motion.

Plaintiff submits that the Court should grant preliminary approval because the proposed settlement, reached with the assistance of a neutral mediator, provides substantial relief for the Settlement Class and because the terms of the settlement are fair, adequate, and reasonable. Under the Settlement, Chase will make a payment to each Settlement Class Member in an amount equal to all fees that Chase collected from that Settlement Class Member plus all ATM surcharges third-party ATM operators charged that Settlement Class Member, in connection with that Settlement Class Member's BOP Debit Card.[1]

The Settlement provides further that Settlement Class Members who still have active BOP Debit Card accounts will receive their settlement payments as automatic deposits, unless they elect to receive their payments by means of a check.  (Settlement Class Members also can request a free replacement BOP Debit Card.)  Settlement Class Members who do not currently have active BOP Debit Card accounts will be able to submit claims for payment by check. Further, Settlement Class Members requesting checks will have the option of requesting that any residual balance on their cards be included in their checks.  The Settlement accordingly provides Settlement Class Members a full recovery of Chase fees and ATM surcharges paid in connection with their BOP Debit Cards and substantial flexibility in receiving such payments.

---

[1] "BOP Debit Card" means a prepaid debit card issued to an inmate of the federal Bureau of Prisons ("BOP"), upon that inmate's release from a federal correctional facility, as part of the U.S. Debit Card program operated for BOP by Chase.

As set forth in further detail herein, the Settlement meets the standard for preliminary approval. Thus, Plaintiff moves the Court to enter the [Proposed] Order Granting Preliminary Approval of Class Action Settlement submitted with this motion. That order contemplates: (1) the preliminary approval of the Settlement's terms; (2) the certification of the Settlement Class, for settlement purposes only; (3) the appointment of Plaintiff as the class representative; (4) the appointment of Golomb & Honik, P.C., as Class Counsel; (5) the appointment of Kurtzman Carson Consultants LLC ("KCC") as the Settlement Administrator responsible for Class Notice and Claim Administration; (6) the approval of the form, method, and plan of Class Notice; (6) the entry of procedures and deadlines for Settlement Class Members to make claims, to object, or to exclude themselves from the Settlement; and (7) the scheduling of a Fairness Hearing and related deadlines.

## II.   BACKGROUND

### A.   Case Overview

In September 2008, the United States Department of the Treasury ("Treasury") entered into a Financial Agency Agreement ("FAA") with Chase. The FAA requires Chase to act as Treasury's financial agent and operate the U.S. Debit Card Program, which "provide[s] debit card services to cardholders within and outside of the United States as necessary to facilitate the use of debit cards by Federal agencies and cardholders anywhere in the world." *See* ECF 14-4, FAA ¶ 3(c). In July 2011, Treasury and the Federal Bureau of Prisons ("BOP") executed an interagency agreement permitting BOP to participate in the U.S. Debit Card Program. The same month, Treasury executed a "Direction to Agent" obligating Chase to "provide U.S. Debit Card program products and services to the BOP." *See* ECF 14-6, Direction to Agent No. 30, ¶ 2. Under the U.S. Debit Card program operated by Chase for BOP (the "BOP Debit Card Program"), federal prison inmates receive prepaid debit cards upon release, containing and

permitting access to funds BOP held in trust for them during their incarceration (the "BOP Debit Card").  *See* ECF 1, Compl. ¶¶ 15-17.

Plaintiff Jesse Krimes was an inmate at a federal prison in Fairton, New Jersey.  He received a BOP Debit Card upon his release in September 2013.  *See id.* ¶ 27.  On September 11, 2015, Plaintiff filed his complaint ("Complaint") asserting claims against Chase on behalf of a putative class of all released federal prison inmates in the United States who received BOP Debit Cards pursuant to the BOP Debit Card Program.  Plaintiff alleged unjust enrichment, conversion, unfair and deceptive practices, and other claims concerning fees charged to federal correctional facility releasees in connection with BOP Debit Cards; Chase's disclosures to cardholders concerning those fees; and Chase's possession of, and releasees' access to, monies deposited onto BOP Debit Cards.  Plaintiff sought monetary damages and other relief.

On November 20, 2015, Chase filed a motion to dismiss. *See* ECF 14.  Plaintiff opposed the motion.  *See* ECF 16.  On March 4, 2016, the Court held a hearing on the motion to dismiss. Following the hearing, the Court issued an order denying Chase's motion in part, taking other issues under advisement, and ordering further briefing on, and (if necessary) targeted discovery concerning, Chase's immunity defenses.  *See* ECF 22.  The parties subsequently sought an extension of pertinent deadlines so they could engage an experienced mediator to aid in settlement negotiations, described below.  *See* ECF 27.  The Court granted this request on April 20, 2016.  *See* ECF 28; *see also* ECF 29-30.

### B.    Settlement Negotiations

The parties engaged in informal discussions about potential resolution of the case shortly after the hearing on Chase's motion to dismiss in March 2016.  During those discussions, the parties discussed information provided by Chase that related to the scope of the putative class, the nature of the BOP Debit Card Program and Chase's role thereunder, and the fees at issue in

this matter.  After much back-and-forth between the parties' counsel, during which additional facts were learned and discussed, the parties concluded that it would be worthwhile to engage an experienced, neutral mediator to facilitate a potential resolution of this matter.

To that end, the parties jointly engaged an experienced mediator, Mr. Jonathan Marks. *See* Decl. of David J. Stanoch, Esq. ("Stanoch Decl.") ¶ 4 (Ex. B hereto).  The mediation process was non-collusive and conducted at arms' length between the parties with divergent views as to the risks of litigation, and the ultimate value of any judgment, under the supervision of Mr. Marks.  Prior to the mediation, Chase supplied Plaintiff's counsel with certain information pertinent to the case.  The parties also provided Mr. Marks with case materials and information. *Id.*  The parties also had multiple joint and *ex parte* telephone conversations with Mr. Marks.  *Id.* These conversations culminated in an all-day, in-person mediation session before Mr. Marks on May 12, 2016.  *Id.* ¶ 5.  This mediation session resulted in a settlement.  *Id.*

On May 31, 2016, the parties informed this Court of having reached an agreement.  *Id.* ¶ 6.  The parties requested and this Court granted a stay so the parties could finalize the anticipated settlement papers.  *Id.*  The parties executed the Settlement Agreement on August 1, 2016, memorializing the parties' agreement, subject to Preliminary Approval and Final Approval as required by Federal Rule of Civil Procedure 23.  *Id.*

## III.  SUMMARY OF PROPOSED SETTLEMENT TERMS

As set forth more fully below, the Settlement Agreement provides for payment by Chase of up to $446,822 to the Settlement Class, to be distributed to eligible Settlement Class Members.  *See* Agreement ¶¶ 45, 71.  Notice and claims administration costs will be paid by Chase.  *Id.* ¶ 47.  If any of the $446,822 remains unclaimed after the initial distribution of payments to Class Members, Chase will deduct costs of notice and claims administration before making a supplemental distribution on a pro rata basis.  *Id.* ¶ 76.  Chase will also separately pay

(pending Court approval) Plaintiff's requested service award, attorneys' fees, and costs, not to exceed $250,000 in total. *Id.* ¶¶ 46-47.  In exchange for Chase's undertakings, Plaintiff and the Settlement Class will provide Chase with a release of all claims that were or could have been alleged in the action. *Id.* ¶¶ 89-94.  Final approval of the Settlement Agreement will result in the dismissal with prejudice of Plaintiff's individual and class claims against Chase. *Id.* ¶ 70(d). The notice program is designed to reach the greatest practicable number of Settlement Class Members, *see id.* ¶¶ 53-68, and the flexible distribution plan for paying eligible Settlement Class Members is designed to maximize the number of Settlement Class Members receiving a payment. *See, e.g., id.* ¶ 73.  Both the notice program and claims administration will be overseen by KCC, a reputable organization with deep experience in the field. *See id.* ¶ 37; *see also* Ex. C hereto (declaration of Patrick M. Passarella on behalf of KCC).

A. **The Settlement Class**

The Settlement Agreement contemplates a nationwide settlement class consisting of all persons in the United States who were issued BOP Debit Cards upon their release from a federal correctional facility, from the inception of the BOP Debit Card Program through the date of preliminary approval of this settlement. *See* Agreement ¶¶ 43, 72.  The total class will number more than 50,000, the approximate number of BOP Debit Cards issued by Chase since the implementation of the BOP Debit Card Program.

B. **Monetary Relief**

Chase will pay a total of up to $466,822 for monetary relief to the Settlement Class. Agreement ¶¶ 45, 71.  From this amount, each Settlement Class Member will be entitled to receive a settlement payment in the amount of all fees imposed by Chase, as well as all third-party ATM surcharges, that the Settlement Class Member incurred on his or her BOP Debit Card before the date of preliminary approval.  Agreement ¶ 71. That is, each Settlement Class Member

will be entitled to recover all Chase-related fees or third-party ATM surcharges he or she paid in connection with his or her BOP Debit Card up to the date of preliminary approval.  *Id.*

Settlement Class Members who still have active BOP Debit Card accounts will receive their settlement payments via deposit back into their accounts.  *Id.* ¶ 73.  Or, at their election, Settlement Class Members may choose instead to receive either a paper check or a replacement debit card at no charge by submitting a claim form.  *Id.*  Settlement Class Members who no longer possess an active BOP Debit Card account can, through a claims process, request to receive their settlement payment via a paper check.  *Id.* ¶ 75.  In addition, eligible Settlement Class Members opting to receive a paper check may also request to receive any residual balance on their BOP Debit Cards, essentially permitting Settlement Class Members to "cash out" their BOP Debit Cards at no cost.  *Id.* ¶ 77.

### C.      <u>Class Release</u>

As consideration for the monetary relief under the Settlement Agreement, Chase will receive a Release from each Settlement Class Member as more specifically delineated in the Settlement Agreement with respect to any claim that was alleged or could have been alleged in the Complaint, and that relates to Chase's possession of Settlement Members' funds, or Settlement Class Members' access to their funds, as part of the BOP Debit Card Program; the imposition of Chase fees or ATM surcharges in relation to the BOP Debit Card Program; and the disclosures (e.g., fee schedule) provided by Chase in relation to BOP Debit Cards.  *See* Agreement ¶¶ 89-94.  If the settlement receives final approval, this action will be dismissed with prejudice.  *Id*. ¶ 70(d).

D.      **The Notice Program and Settlement Administration**

Chase will advance and pay all notice program and settlement administration costs. Agreement ¶ 47.  This is an added benefit to the class as these costs will be paid separately from Chase's initial payment of the monetary relief discussed above, as well as any payment of a service award, attorneys' fees, or costs.  *Id.*  The parties have selected KCC as the notice and settlement administrator for this Settlement.  *Id.* ¶ 37.  The Class Notice, which KCC will disseminate, has been designed to give the best notice practicable, is tailored to reach members of the Settlement Class, and is reasonably calculated under the circumstances to apprise the Settlement Class of the Settlement and, specifically, each Settlement Class Member's rights (i) to make claims (including in the event they are eligible for direct deposit but choose an alternate method of payment), (ii) to exclude themselves from the Settlement, or (iii) to object to the Settlement's terms, or Class Counsel's anticipated fee application and request for a service award for Plaintiff.  *See id.* ¶¶ 53-68.

The Class Notice program includes:  (i) direct mail notice; (ii) publication notice; (iii) the creation of a Settlement Website; (iv) the creation of a toll-free telephone number; and (v) long-form notice with more detail than the direct mail or publication notices, which will be available on a Settlement Website, and/or upon written or telephonic request.  *See id.* ¶¶ 53-54, 61, 64-66. All forms of Notice will include, among other information:  (i) a context-appropriate description of the Settlement; (ii) the date by which Settlement Class Members may make a claim or form-of-payment election, exclude themselves from the Settlement Class, or object to the Settlement; (iii) the address of the Settlement Website; and (iv) the number of the toll-free telephone line. *Id.* ¶¶ 55-60.  The Class Notice plan constitutes sufficient notice to persons entitled to receive it, and satisfies all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

Requests for exclusion and Claim Forms (including requests to elect an alternate method of payment) must be sent to the Settlement Administrator and postmarked or, in the case of Claim Forms, completed through the Settlement Website before their respective deadlines. *See* Agreement ¶¶ 58, 77. Objections must be filed with the Court, with copies of the objections sent to the parties' counsel, by the objection deadline. *Id.* ¶¶ 59-60. The deadlines for objections, requests for exclusion, and claims are all before the Fairness Hearing (*see* chart at Part VII, *infra*).

### 1.    <u>Mailed Notice</u>

Chase will provide the Settlement Administrator with a list of those members of the Settlement Class identified through Chase's records, for which Chase has reasonably accessible mailing address information. *Id.* ¶¶ 53-54. The Settlement Administrator will disseminate mailed notice to those persons. *Id.* ¶¶ 54-57, 62. The mailed notice will further direct recipients to the Settlement Website or toll-free number for additional information, including the Long Form Notice or other papers if desired. *Id.* ¶ 65-66.

### 2.    <u>Publication Notice</u>

The Settlement Administrator will cause notice of the Settlement to appear in print publications. *Id.* ¶ 64. Arrangements for publication must be completed no later than 60 days after the Preliminary Approval Order. *Id.* ¶¶ 25, 64. The publication notice will appear in publications by USA Today, ESPN, and People, and potentially additional options. *See* Ex. C (Decl. of Patrick M. Passarella on behalf of KCC).

### 3.    <u>The Settlement Website and the Toll-Free Settlement Phone Line</u>

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. *See* Agreement ¶ 65. The Settlement Website will include an electronic and printable copy of the

Long Form Notice, information about the litigation and the Settlement, and important court documents. *Id*. ¶ 52. The Settlement Website will also include an electronic and printable Claim Form, which may be submitted online or printed and mailed. *Id.*; *see id.* ¶ 16. The Settlement Website shall be activated as soon as practicable following Preliminary Approval, and prior to commencement of the Notice Program. *Id.* ¶ 40.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class Members to obtain additional information about the Settlement. *Id.* ¶ 66.

### 4.     Settlement Administration

The Settlement Administrator's duties and responsibilities include, among other things: (i) establishing and maintaining a Post Office box for requests for exclusion from the Settlement Class; (ii) establishing and maintaining the toll-free telephone line for Settlement-related inquiries; (iii) establishing and maintaining the Settlement Website; (iv) handling any mailed Class Member inquiries; (v) processing requests for exclusion; (vi) tracking and processing Claims Forms; and (vii) taking all other steps the parties deem appropriate to effectuate the Settlement. *See, e.g.*, Agreement ¶¶ 50-52.

### 5.     Service Award, Attorneys' Fees, and Costs

Chase will also not oppose Class Counsel's request for a reasonable service award, attorneys' fees, and costs up to a total of $250,000. *Id.* ¶¶ 95-96. The service award will compensate Plaintiff for his time and effort in this matter, for participation in the settlement process, and for the risks he undertook in prosecuting this action. The service award, attorneys' fees, and costs will be paid by Chase apart from the monetary relief available to the Settlement Class. *Id.* ¶¶ 46, 95-96.

## IV.    THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides for judicial approval of the compromise of claims brought on a class basis if the proposed class action settlement is "fair, reasonable, and adequate."  Approval of class action settlements is committed to the sound discretion of the district court.  *See* Fed. R. Civ. P. 23(e).  In exercising its discretion, district courts are mindful of the strong judicial policy favoring settlements.  *See, e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

At the preliminary approval stage, "the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute." *Mack Trucks, Inc. v. Int'l Union*, UAW, Civ. A. No. 07-3737, 2011 U.S. Dist. LEXIS 51514, at *7 (E.D. Pa. May 12, 2011) (internal quotations and citation omitted).  Rather, a court should determine whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies[.]"  *Id.* (internal quotations and citations omitted).   A district court's evaluation of a request to preliminarily approve a class action settlement focuses on whether the proposed settlement is the result of the parties' good-faith negotiations, whether there was any discovery, if experienced counsel negotiated and support the settlement, and if the settlement is within the range of reasonableness.  *See, e.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *Glaberson v. Comcast Corp.*, Civ. A. No. 03-6604, 2014 U.S. Dist. LEXIS 172040, at *14 (E.D. Pa. Dec. 12, 2014); *see also Manual for Complex Litigation (Fourth)* § 21.61-21.62.   Here, each of these considerations warrants preliminary approval of the settlement.

### A.   The Settlement Was The Result of Arms' Length, Informed Negotiations

Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002); *see, e.g.*, *Glaberson*, 2014 U.S. Dist. LEXIS at *14 ("Preliminary approval analysis often focuses on whether the settlement is the product of arms-length negotiations.") (internal quotations and citation omitted).

Here, the parties engaged in arms' length negotiations. *See, e.g.*, Stanoch Decl. ¶¶ 4-7. The parties engaged the services of an experienced mediator, Mr. Jonathan Marks, with whom the parties had multiple joint and *ex parte* telephonic conferences. *Id.* ¶ 4. The parties also provided Mr. Marks with case materials and information. *Id.* The parties' all-day, in-person mediation session occurred after Chase had provided information about the fees at issue and the scope and nature of the putative class. *Id.* ¶¶ 4-5. The parties' discussions with Mr. Marks culminated in an agreement in principle. *Id.* Between the information provided by Chase, and Mr. Marks' assistance, the parties and their counsel had an informed view of the strengths and weaknesses of their respective positions, the risks of continued litigation, and an appreciation for the substantial value this settlement delivers to the Settlement Class when evaluated in this context. *See id.* ¶¶ 7-12.

### B.   There Was Discovery

As noted above, Chase provided information to Plaintiff (and Mr. Marks) with information relating to the scope of the putative class, the nature of the BOP Debit Card Program and Chase's role thereunder, and the fees challenged through the Complaint. *Id.* ¶ 4.

### C.   Counsel Are Experienced In Similar Litigation

Both sides' counsel are qualified and competent class action litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement.  Plaintiff's Class Counsel has successfully handled national, regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts.  *See* Stanoch Decl. ¶¶ 16-17.

> **D.     The Settlement Is Within The Range of Reasonableness**

In preliminarily assessing whether a settlement falls within the range of reasonableness, courts examine the potential relief to the class.  *See, e.g.*, *Mack Trucks*, 201 U.S. Dist. LEXIS at *8.  Here, the Settlement provides for payment to each eligible Settlement Class Member, up to a total of $446,882.  *See, e.g.*, Agreement ¶¶ 45, 71, 73.  The $446,882 sum was settled upon because it accounts for all domestic Chase fees and ATM surcharges.  If the total amount of initial distributions to Settlement Class Members is less than $446,882, after deducting the cost of notice and settlement administration, Chase will make a second, pro rata distribution to all Settlement Class Members who received an initial distribution.  *Id.* ¶¶ 45, 71, 76.  Settlement Class Members with active BOP Debit Card accounts will automatically receive their cash payments via deposits directly onto their debit cards or, at their option, via check or replacement debit card.  *Id.* ¶ 73.  Further, Settlement Class Members opting to receive a check will have the additional option to request the residual balance on their BOP Debit Cards to be added to the settlement payment check, thus providing an alternative, simple, free way to receive all monies a Settlement Class Member might have on a BOP Debit Card.  *See id.* ¶¶ 77, 86.

The reasonableness of the Settlement must also be viewed against the complexity, expense, and duration of litigation, the stage of the proceedings, and the likelihood of success at trial.  *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Foundation for New Era Philanthropy Litig.*, 175

F.R.D. 202, 205 (E.D. Pa. 1997).[2]  Each of these considerations weighs in favor of approving the Settlement.

Although Settlement Class Members' claims may vary in value, the continued litigation of this matter will require (and has already required) substantial resources.  Stanoch Decl. ¶¶ 9-14.  Continued litigation of this matter would necessitate further discovery, including depositions and the extraction, production, and analysis of various data from Chase.  *Id.* This does not include any third-party discovery of government agencies that could be needed to address Chase's immunity defenses.  *Id.*  The parties have not yet briefed class certification, which likely would require expert disclosures and depositions, and motions for summary judgment have yet been filed.  *Id.* ¶¶ 10, 13.  All of these matters would require significant time and expense, and while Plaintiff and his counsel remain committed to Plaintiff's claims, they are also pragmatic that there is no guarantee of success and that substantial obstacles exist at the summary judgment, class certification, and trial phases as more fully discussed below.  *Id.* ¶¶ 10-13.

Moreover, the Settlement was reached at a critical moment:  after receipt of vital information from Chase, but before pivotal procedural and merits junctures after which the difficulty and expense of litigating Plaintiff's claims would have increased very substantially.  This has enabled class counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims and Chase's defenses. *See id.*  Plaintiff also faces the very real prospect of being foreclosed from some or any recovery at all as a result of summary judgment or other motions practice, or at trial.  *See id.*

---

[2] As this motion only requests preliminary approval, not all of the *Girsh* factors are pertinent. Plaintiff reserves the right to present additional argument or evidence about the *Girsh* factors as appropriate.

## V.     THE SETTLEMENT SATISFIES RULES 23(a) AND 23(b)

"In order to approve a class settlement agreement, a district court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)" are met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). "The requirements of Rule 23(a) and (b) are designed to insure that a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives." *Id.* (internal quotations and citation omitted). Here, the Settlement plainly satisfies Rules 23(a) and (b), and should be approved consistent with the "overriding interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

### A.     The Settlement Satisfies Rule 23(a)

"Rule 23(a) lays out four threshold requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re NFL Players Concussion Injury Litig.*, No. 15-2206, *et seq.*, 2016 U.S. App. LEXIS 6908, at *22 (3d Cir. Apr. 18, 2016); *see* Fed. R. Civ. P. 23(a). The Settlement satisfies each of these requirements.

#### 1.     The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Although no magic number exists, courts typically find the numerosity requirement to be satisfied if there are more than 40 class members. *In re NFL*, 2016 U.S. App. LEXIS 6908, at *22. The settlement easily exceeds this threshold. According to Chase's records, there are more than 50,000 class members.

### 2.      Common Questions of Fact and Law Exist

Rule 23(a)'s commonality requirement also is satisfied here.  "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re NFL*, 2016 U.S. App. LEXIS at *22 (internal quotations and citation omitted).  Thus, commonality is "easily met" in most instances. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Such is the case here.  Plaintiff's and other Settlement Class Members' claims stem from a common course of conduct.  For instance, the only way for each Settlement Class Member to access their funds upon release was through a Chase-issued BOP Debit Card.  Each Settlement Class Member was subject to the same fees Chase charged in connection with the BOP Debit Card.  Similarly, Chase's principal defenses, such as its government immunity defenses, are common to all Settlement Class Members.

### 3.      Plaintiff's Claims Are Typical

The typicality requirement aims to assure that the interests of named class representatives align with the interests of the class.  *See In re NFL*, 2016 U.S. App. LEXIS, at *25.  The Third Circuit has "set a low threshold for typicality."  *Id.* (internal quotations and citation omitted).  To this end, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct."  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (internal quotations and citation omitted).

The proposed class representative's claims are identical to those of the Settlement Class. As alleged in the Complaint, Plaintiff alleges the same type of injury arising out of the same conduct or circumstances to which other Settlement Class Members were exposed.  Plaintiff and Settlement Class Members could access their funds upon release only through a BOP Debit

Card.  *See, e.g.*, ECF 1 ¶¶ 2-3, 8, 17.  All Settlement Class Members were subject to the same schedule of fees.  *See, e.g.*, *id.* ¶¶ 5, 8. Thus, Plaintiff meets the typicality requirement, and is well-suited to represent other Settlement Class Members.

### 4.      The Adequacy Requirement Is Met

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement focuses on whether the representatives have any conflicts of interest with the interests of the class, and whether class counsel is capable of representing the class.  *See Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

The proposed class representative's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent members of the Settlement Class have an equally great interest in the relief offered by the Settlement, and there is no divergence between Plaintiff's interests and those of the other members of the Settlement Class.  *See* Stanoch Decl. ¶ 14.  As noted above, the proposed class representative and other Settlement Class Members' claims arise from the same conduct and turn on the same alleged misrepresentations and omissions, and the proposed class representative seeks remedies equally applicable and beneficial to himself and all other Settlement Class Members.  Further, the proposed class representative is represented by qualified and competent Class Counsel with extensive experience and expertise in prosecuting complex class actions.  *Id.* ¶¶ 16-17.

### 5.      The Settlement Satisfies Rule 23(b)(3)

Pertinent to the settlement's proposed monetary relief, Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.[3]  Predominance "'tests whether

---

[3]  Potential manageability concerns are not pertinent here because this is a proposed settlement class.  *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 303-304 (3d Cir. 2011) (en banc).

proposed classes are sufficiently cohesive to warrant adjudication by representation.'"   *In re NFL*, 2016 U.S. App. LEXIS 6908, at *42 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).   Courts are "more inclined to find the predominance test met in the settlement context."   *Sullivan*, 667 F.3d at 304 n.29 (internal quotations and citation omitted).

Plaintiff satisfies the predominance requirement because liability questions common to the Settlement Class substantially outweigh any possible individual issues.   The claims of the proposed class representative and the Settlement Class are based on the same legal theories and the same uniform conduct.   Further, resolution of the claims of Settlement Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication.   *See* Fed. R. Civ. P. 23(b)(3).   Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue.

Resolution of the claims of the Settlement Class Members through the settlement of this action is also superior to a competing, copycat action filed on June 6, 2016, captioned *Sheib v. JPMorgan Chase & Co.*, No. 16-cv-2880 (E.D.N.Y.) (complaint attached as Exhibit D hereto). *See, e.g.*, Fed. R. Civ. P. 23(b)(3)(B) (matter pertinent to superiority includes "the extent and nature of any litigation concerning any controversy already begun by or against class members"); *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005) (discussing relevance of other individual suits in approving a class action settlement, and noting that "these individuals can opt-out and pursue their claims individually" if they wish). The complaint in *Sheib* – the only other such complaint known to Plaintiff – was filed after the parties to this litigation had already negotiated in good faith and reached a settlement in principle, and after this Court set a deadline for submission of a motion for preliminary approval of a class action settlement.   The *Sheib*

complaint challenges the same BOP Debit Card Program, bringing claims on behalf of a putative nationwide class of BOP Debit Card holders who have incurred fees for using their cards or have an unused balance under $20.  *See* Ex. D. Thus, while the proposed *Krimes* Settlement Class (like the class named in the *Krimes* complaint) includes all individuals who received a BOP Debit Card, the proposed *Sheib* class includes those BOP Debit Card recipients who incurred a fee or have an unused balance under $20.  Those persons can receive relief under the proposed *Krimes* settlement –a namely, a refund of their fees and a means to obtain all unused funds, of whatever amount, by check for free.

## VI.   THE NOTICE PROGRAM IS APPROPRIATE AND SHOULD BE APPROVED

For due process purposes, "notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Glaberson*, 2014 U.S. Dist. LEXIS 172040, at *18; *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Notice should be the best practicable under the circumstances, including notice to all members who can be identified through reasonable efforts. *See Eisen*, 417 U.S. at 173.

The proposed Class Notice plan – collectively, direct mailed notice, publication notice, and a dedicated Settlement Website and toll-free telephone line – satisfies due process.  The Class Notice will inform Settlement Class Members who are active cardholders that they will receive settlement payments via direct deposit or, upon their election, via paper check or replacement debit card; they may also request a free replacement BOP Debit Card.  *See, e.g.*, Agreement ¶¶ 51-52, 53-59.  Settlement Class Members who no longer possess an active card account will receive a paper check.  *Id.* ¶¶ 73, 75.  Eligible Settlement Class Members have the option to request their residual balances on BOP Debit Cards to be aggregated with any settlement payment being disbursed via paper check.  *Id.* ¶¶ 56, 71, 86.

The Class Notice will also inform Settlement Class Members about their options for opting-out of or objecting to the Settlement, the time and location of the Fairness Hearing, the pertinent terms of the Settlement, and how to obtain additional information.  The language of the proposed Notice is plain and easy to understand and provides neutral and objective information about the nature of the Settlement.  *See generally* Ex. C (Decl. of Patrick M. Passarella on behalf of KCC).

Accordingly, the proposed plan to disseminate Class Notice satisfies due process requirements.  *See, e.g.*, *Esslinger v. HSBC Bank Nevada, N.A.*, Civ. A. No. 10-3213, 2012 U.S. Dist. LEXIS 165773, at *19 (E.D. Pa. Nov. 2012) ("'[F]irst-class mail and publication regularly have been deemed adequate under the stricter notice requirements . . . of Rule 23(c)(2).'") (alteration in original) (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 91 (3d Cir. 1985)); *Hanlon v. Palace Enmt. Holdings,* LLC, Civ. A. No. 11-987, 2012 U.S. Dist. LEXIS 364, at *17 (W.D. Pa. Jan. 3, 2012) (use of summary notice via email or postcard, based on defendant's databases, "provides a direct avenue to the persons most likely to be potential class members.  The court finds this is the best notice practicable under the circumstances.").

## VII.   THE PROPOSED SCHEDULE OF EVENTS

The proposed schedule of events depends on the date this Court on which may enter a Preliminary Approval Order and schedule a Fairness Hearing.  If a Preliminary Approval Order is entered on September 1, 2016 (for the sake of illustration), the parties propose the following deadlines:

| Event | Deadline |
|-------|----------|
| Deadline for Commencement of Class Notice | October 31, 2016 |
| Deadline to File Fee and Service Award Application | December 9, 2016 |
| Deadline for Class Members to Submit Claim, Object, or Opt-Out | December 30, 2016 |
| Earliest Date for Fairness Hearing | January 30, 2017 |

If Preliminary Approval is not granted by September 1, Class Counsel can propose dates by which the events above will occur.

## VIII.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court preliminarily approve the class action settlement, conditionally certify the Settlement Class, approve the proposed notice plan, and schedule a fairness hearing.

Dated:  **August 1, 2016**

BY:  _____*/s/ DJS8892*_____
Richard M. Golomb, Esquire
Ruben Honik, Esquire
Kenneth J. Grunfeld, Esquire
David J. Stanoch, Esquire
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email:  rgolomb@golombhonik.com
          rhonik@golombhonik.com
          kgrunfeld@golombhonik.com
          dstanoch@golombhonik.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, David J. Stanoch, Esquire, hereby certify that on this **1**[st] day of **August, 2016**, a copy of the foregoing **Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement** was filed and served upon all counsel via operation of the Court's CM/ECF system.

*/s/ DJS8892*
_____
**David J. Stanoch, Esquire**
