IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSE KRIMES,                          :
                                       :        CIVIL ACTION
on behalf of himself and all           :        NO. 15-5087
others similarly situated,             :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :
                                       :
JPMORGAN CHASE BANK, N.A., et al.,     :
                                       :
          Defendants.                  :


M E M O R A N D U M


EDUARDO C. ROBRENO, J.                    OCTOBER 26TH, 2016

        This action involves the allegedly abusive practices

JPMorgan Chase Bank used in connection with debit cards issued

to released prisoners. Presently before the Court is

"Plaintiff's Unopposed Motion for Preliminary Approval of Class

Action Settlement," ECF No. 31, and a class member's objections

and "Motion for Leave to Take Discovery Regarding Class Action

Settlement." ECF No. 33. For the reasons that follow, the Court

will overrule the objections and deny the motion for leave to

take discovery, and will preliminarily approve the settlement

and certify the settlement class.

I.      **BACKGROUND**

    A.      <u>Factual Background and Procedural History</u>

        In September of 2013, Krimes was released from federal prison. ECF No. 1 ¶ 27. Upon his release, the Bureau of Prisons ("BOP") provided to him a prepaid Chase debit card pursuant to the U.S. Debit Card program. <u>Id.</u> ¶ 28. The card was loaded with money that Krimes possessed when he was initially incarcerated and funds he accrued while incarcerated. <u>Id.</u>

        According to Krimes, if he and the other releasees "want[ed] <u>their own</u> money after they [were] released from prison, they [were] forced to accept a 'consumer relationship' with Chase" and "accept the Chase U.S. Debit Card's terms." <u>Id.</u> ¶¶ 2, 17 (emphasis original). Krimes also contends that Chase charged excessive fees for using the card. <u>Id.</u> ¶¶ 5, 29. For example, card holders were charged for using the card at a bank teller window, using non-network ATMs, checking their account balances, and were charged an inactivity fee. <u>Id.</u> ¶¶ 5, 6, 29-30, 35.

        Krimes initiated this action on behalf of himself and others similarly situated on September 11, 2015 against Defendants Chase and Does 1-10, alleging unjust enrichment, conversion, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. <u>Id.</u> ¶¶ 52-60, 86-108. The

Court has jurisdiction under the Class Action Fairness Act. 28
U.S.C. § 1332(d).

On March 31, 2016, the parties filed a joint motion to
stay the proceedings pending mediation. ECF No. 27. The Court
granted that motion on April 20, 2016. ECF No. 28. The parties
engaged a neutral mediator, Jonathan Marks, and had multiple
joint and ex parte telephone conferences with him, culminating
in an all-day in-person mediation session on May 12, 2016. These
negotiations resulted in the present settlement agreement.

On June 1, 2016, the Court ordered the parties to file
a motion for preliminary approval of a class action settlement.
ECF No. 29. On August 1, 2016, Plaintiff filed the instant
motion. ECF No. 31.

On August 9, 2016, Brett Sheib a potential class
member and plaintiff in his own similar suit that he filed on
June 6, 2016 in the United States District Court for the Eastern
District of New York, filed his "Class Member Objection to
Motion for Preliminary Approval of Class Action Settlement and
Motion for Leave to Take Discovery Regarding Class Action
Settlement." ECF No. 33. Thereafter, Plaintiff and Chase filed
responses and Sheib filed a motion for leave to file a reply.
ECF Nos. 37-39. The Court then held a preliminary approval
hearing on September 23, 2016. ECF No. 42.

3

B.    The Proposed Class Action Settlement

The terms of the proposed class action settlement are set forth in the Settlement Agreement and Release, ECF No. 31 Ex. A, and are outlined below.

1.    The Proposed Settlement Class

The Settlement Agreement provides for a settlement class defined as follows:

> All persons in the United States who, up to and including the date of preliminary approval, were issued BOP Debit Cards upon their release from federal correctional facilities as part of the U.S. Debit Card program operated by JPMorgan Chase Bank, N.A. for the United States Treasury Department and the Federal Bureau of Prisons.

ECF No. 31 Ex. A ¶ 43.

2.    The Proposed Settlement Terms

The Settlement Agreement provides that Chase will pay up to $446,822 to the settlement class. Id. ¶¶ 45, 71. From this amount, each class member will be entitled to reimbursement of all fees imposed by Chase as well as all third-party ATM surcharges that were incurred on BOP debit cards before the date of preliminary approval. Id. ¶ 71.

Settlement class members who still have active BOP debit card accounts will receive their settlement payments via deposit back into their accounts. Id. ¶ 73. Alternatively, they

4

may choose to receive either a paper check or replacement debit card at no charge. Id. Class members who no longer possess an active BOP debit card account can request their payment via a paper check. Id. ¶ 75. Any class member requesting a check may also request that it include, in addition to his settlement payment, any residual balance in his debit card account. Id. ¶ 77.

Notice and claims administration costs will be paid by Chase. Id. ¶ 47. If any of the money remains unclaimed after the initial distribution of payments, Chase will deduct the costs of notice and claims administration before making a supplemental distribution on a pro rata basis. Id. ¶ 76. Chase will also separately pay Plaintiff's requested service award, attorneys' fees, and costs not to exceed $250,000. Id. ¶ 46-47.

In exchange for the benefits provided by the settlement, settlement class members agree to release all claims:

> that were or could have been alleged in the Action and result from, arise out of, are based upon, or in any way relate to Chase's possession of Settlement Class Members' funds, or Settlement Class Members' access to their funds, as part of the BOP Debit Card Program; imposition on Settlement Class Members of Chase Fees or ATM Surcharges in relation to the BOP Debit Card Program; or any disclosures or other communication to Settlement Class Members by Chase concerning BOP Debit Cards.

Id. ¶ 89.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. When presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met and then must separately determine that the settlement is fair to the class under Rule 23(e). In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014).

Where a class action settlement is reached before the district court has issued a certification order under Rule 23(e) - a procedural posture that results in what is often termed a "settlement class" - the Advisory Committee's notes to the 2003 Amendment to Rule 23(e)(1)(B) contemplate that "the decisions on certification and settlement" may "proceed simultaneously." However, the exact process a district court should follow when presented with a "settlement class" is not prescribed by Rule 23(e).

The Federal Judicial Center's Manual for Complex Litigation (Fourth) explains that "'[r]eview of a proposed class

6

action settlement generally involves two hearings.'" In re Nat'l Football League, 775 F.3d at 581 (quoting Manual for Complex Litigation § 21.632 (4th ed. 2004)). In the first hearing, or "preliminary fairness review," counsel submit the proposed terms of the settlement to the court, and the court makes a "preliminary fairness evaluation." Id. (citing Manual for Complex Litigation § 21.632).

If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement to afford them an opportunity to be heard, opt out of the class, or object to the settlement. See Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5); Manual for Complex Litigation § 21.633.

After class members are notified, the court proceeds with the second hearing, the formal "fairness hearing" as required by Rule 23(e)(2). Manual for Complex Litigation § 21.633. If the court ultimately concludes that the settlement is "fair, reasonable, and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). In the instant motion, Plaintiffs seek preliminary approval.

A.    Whether Class Certification is Proper

During the preliminary fairness evaluation, a court must make a preliminary determination on class certification for

7

the purpose of issuing a notice of settlement. <u>In re Nat'l Football League</u>, 775 F.3d at 586. Although the court will undertake a "rigorous analysis" as to whether class certification is appropriate at the later fairness hearing, compliance with Rule 23(a) and (b) must still be analyzed at this juncture. <u>Id.</u> at 582-83.

Under Rule 23(a), Plaintiffs must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3), under which Krimes seek class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Finally, in addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement, ascertainabililty of the class, that must be assessed during the Court's preliminary determination on class certification.

8

1.    Rule 23(a) Factors

a.    Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty, the numerosity prong has been met. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as Chase's records show that there are more than 50,000 settlement class members, equaling the number of BOP debit cards issued by Chase since the implementation of the BOP debit card program.

b.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This commonality element requires that the plaintiffs "share at least one question of fact or law with the grievances of the prospective class." Rodriguez v. Nat'l City Bank, 726 F.3d 372, 382 (3d Cir. 2013). To satisfy the commonality requirement, class claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).

Commonality exists in this case because all of the settlement class members' claims stem from a common course of conduct. Each class member could access their funds upon release only through a BOP debit card. Each was also subject to the same fees Chase charged in connection with the cards. Also, Chase's principal defenses, such as government immunity, are common to all class members.

c.    Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." Baby Neal v. Casey, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 532 (3d Cir. 2004).

The typicality element is satisfied because Krime's claims are identical to those of the settlement class. He alleges the same type of injury arising out of the same conduct or circumstances to which other settlement class members were exposed. Upon release from prison, Plaintiff and the class members could only access their funds via the BOP debit card and were all subject to the same fees and conditions. Thus, Plaintiff is well-suited to represent the other settlement class members.

d.      Adequacy of Representation

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." Amchem v. Windsor, 521 U.S. 591, 625 (1997). The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 312 (3d Cir. 1998) (internal quotation marks omitted).

First, Plaintiff's counsel, Golomb & Honik, P.C., has represented to the Court that they have successfully handled at least a dozen national, regional, and statewide class actions, and other complex multi-party actions in both federal and state courts. ECF No. 31 Exh. B ¶¶ 16-17. They also served on the executive committee in the multi-district litigation In re Budeprion XL Sales & Marketing Practices Litigation and currently serve as liaison counsel in the multidistrict litigation In re Benicar (Olmesartan) Litigation. Id. Plaintiffs' counsel litigated this matter for approximately one year. They opposed Defendant's motion to dismiss, exchanged discovery, and engaged in lengthy negotiations with Defendant through a neutral mediator, which resulted in a successful settlement. The Court concludes that Plaintiff's counsel is well qualified to represent the class.

Second, Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the settlement class. Plaintiff and the absent class members have an equal interest in the relief offered by the Settlement Agreement. Also, there is no divergence between Plaintiff's interests and those of the other class members. Both Plaintiff's and the other class members' claims arise from the same conduct and they all seek remedies equally applicable and beneficial to them all. The

12

Court concludes that there are no conflicts of interest between the Plaintiff and the class such that the adequacy of representation requirement is met.

In sum, Plaintiff has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

### 2.   Rule 23(b)(3) Factors

In addition to satisfying each of the prerequisites in Rule 23(a), a class representative must show that the action falls into at least one of the three categories provided in Rule 23(b). Plaintiff brings this action under Rule 23(b)(3). ECF No. 31 at 16. Under Rule 23(b)(3), a class action may be maintained if; (1)common questions of law or fact predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 624. Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3), Advisory Committee's Note to 1966 Amendment.

13

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." In re Warfarin, 391 F.3d at 533-34 (internal quotation marks omitted). When assessing superiority and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Plaintiff satisfies the predominance requirement because liability questions common to the settlement class substantially outweigh any possible individual issues. Plaintiff's claims and those of the class are based on the same legal theories and same uniform conduct.

Resolution of the claims of the settlement class members is superior to individual law suits because it promotes consistency and efficiency of adjudication. Since the individual claims are relatively small, without the class, individuals might lack incentive to pursue their claims.

Resolution of the claims through this settlement also appears to be superior to a competing class action filed on June 6, 2016, captioned Sheib v. JP Morgan Chase & Co., No. 16-cv-

14

2880 (E.D.N.Y.). See In re Community Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005) (discussing the relevance of other individuals' suits in approving a class action settlement, and noting that "these individuals can opt-out and pursue their claims individually"). The complaint in Sheib was filed after the parties in this litigation had already negotiated and reached a settlement and after this Court set a deadline for submission of a motion for preliminary approval.

The Sheib complaint challenges the same BOP debit card program and brings claims on behalf of a nationwide class of BOP debit card holders who have incurred fees for using their cards or have an unused balance under $20. ECF No. 31 Exh. D ¶ 25. Thus, while the settlement in this case includes all individuals who received a BOP debit card, the proposed Sheib class is limited to those who incurred a fee or have an unused balance under $20. Such individuals can receive a refund of their fees and a means to obtain all unused funds under the current proposed settlement, making them whole. Moreover, the proposed resolution in the Sheib case is limited to the issuance of checks to the class members while in the Krimes Settlement Agreement, the class members have the option of having their funds deposited onto their debit cards or being issued checks.

ECF No. 31 Ex. A ¶¶ 71-77. Sheib's objections to the Settlement Agreement will be discussed in more detail below.

Thus, the Court concludes that the class action meets the predominance and superiority requirements of Rule 23(b)(3).

### 3.   Ascertainability

In addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement under Rule 23: ascertainability. Byrd v. Aaron's Inc.,784 F.3d 154, 163 (3d Cir. 2015). In Byrd, the Third Circuit explained that "[t]he ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Id. (internal quotation marks and citation omitted).

The putative class is ascertainable because Defendant, as part of the mediation discovery, has identified the number of BOP debit cards that were issued since the implementation of the BOP debit card program. ECF No. 31 Exh. B ¶ 4. The Court finds that Defendant's records are an objective and reliable means of ascertaining the class members.

Based on the above, the settlement class preliminarily satisfies the requirements of Rule 23(a) and (b)(3), as well as

16

the Third Circuit's ascertainability requirement. Therefore,
preliminarily certification of the class is proper.

> B.      Whether the Proposed Settlement is Fair

Even if the requirements for class certification under
Rule 23 are satisfied, in order to approve the proposed
settlement the court must determine whether it is "fair,
reasonable, and adequate" as required by Rule 23(e)(2).
Prudential, 148 F.3d 283, 316-17 (3d Cir. 1998). In deciding
whether to grant preliminary approval of a proposed class action
settlement, the court is required to determine only whether
"'the proposed settlement discloses grounds to doubt its
fairness or other obvious deficiencies such as unduly
preferential treatment of class representatives or segments of
the class, or excessive compensation of attorney, and whether it
appears to fall within the range of possible approval.'" In re
Nat'l Football League Players' Concussion Injury Litig., 301
F.R.D. 191, 198 (E.D. Pa. 2014) (quoting Mehling v. N.Y. Life
Ins., 246 F.R.D. 467, 472 (E.D. Pa. 2007)). A settlement falls
within the "range of possible approval," if there is a
conceivable basis for presuming that the standard applied for
final approval - fairness, adequacy, and reasonableness - will
be satisfied. Mehling, 246 F.R.D. at 472.

17

In making this preliminary determination, the Court's "first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness." In re Nat'l Football League, 301 F.R.D. at 198. A key factor in reviewing fairness is whether the settlement arose from an arm's length negotiation. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975).

In that Chase is offering to refund all of the class members' banking fees and third party ATM fees, and is providing an avenue for the class members to "cash out" any remaining balances on their debit cards, the Court finds that there is a conceivable basis for presuming that the fairness, adequacy, and reasonableness of the Settlement Agreement will be demonstrated during the final approval process. The Court notes that Defendant has also agreed to pay the fees associated with the settlement administrator and the notice requirements. In addition, the Settlement Agreement was reached at arms-length and utilized a neutral mediator. Moreover, there is no appearance of preferential treatment in that all class members are entitled to the same relief. On its face, the Settlement

Agreement does not disclose grounds to doubt its fairness or other obvious deficiencies.

As a result, the Settlement Agreement appears proper under Rule 23(e)(2).

### C.    The Propriety of the Notices

The Court further concludes that the notices of the class action settlement submitted by the parties are adequate. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." Prudential, 148 F.3d at 306. Rule 23 includes two provisions concerning notice of the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise and plain language, state: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be excluded from

19

the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires that all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

The parties describe several forms of notice to their motion: (1) a postcard notice to be sent to each class member; (2) a notice to be published in USA Today, ESPN Magazine and People Magazine; (3) a website which will contain all of the pertinent documents including the Settlement Agreement and Long Form Notice; and (4) a toll-free telephone number. ECF No. 31 Exh. C ¶¶ 7-15. The Court has reviewed the notices and concludes that they explain, in plain language, the settlement and the procedures. See ECF No. 31 Exh. C.

Accordingly, the Court finds that the notice program used in this case satisfies Rule 23(c)(2)(B) and (e).

D.      The Validity of Sheib's Objections

As stated, Sheib filed objections to the parties'
motion for preliminary approval of the Settlement Agreement.
Sheib alleges that the complaint in Krimes exclusively
challenges fees charged by Chase for using the debit cards while
his complaint focuses on Chase's alleged overarching scheme to
issue cards and disincentivize their use so that unused funds
would be "forfeited" to Chase. Sheib asserts that those
"forfeited" amounts substantially exceed any fees that Chase
collected on the debit cards.

Sheib seeks a denial of the motion for preliminary
approval until the Krimes parties exclude the "forfeited" funds
claim at issue in Sheib. Alternatively, he has moved to pursue
discovery in this Court, prior to preliminary approval, to
determine the balance of funds in each class members' debit card
account. He asserts that the Court cannot properly evaluate the
adequacy of the proposed settlement until such discovery is
taken. Sheib raises four main issues that he specifically
contends makes the Settlement Agreement illegal or unfair. The
Court disagrees with Sheib's arguments, overrules his
objections, and will deny his motion for discovery.

First, Sheib contends that the Krimes complaint lacks
any allegations regarding the "forfeited" balances and, thus,

Krimes has no power to settle such claims. The Court disagrees
in that the Krimes complaint specifically alleges conversion in
Count Four based on Chase's allegedly wrongful possession of
class members' funds. See ECF No. 1 ¶¶ 88-96. Even if this were
not the case, a settlement may release claims besides those
specifically alleged in a complaint. In re Prudential Ins. Co.
of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001)
("It is now settled that a judgment pursuant to a class
settlement can bar later claims based on the allegations
underlying the claims in the settled class action.") Clearly,
the claims released in the Settlement Agreement all "arise from
the same nucleus of operative facts" such that they rightly
belong in the same agreement. Id. Similarly, the Court
determines that the Settlement Agreement also adequately
addresses the issue of the "forfeited" funds since the class
members may request a check for the full balance on their BOP
debit cards.

Second, and relatedly, Sheib contends that the
inclusion of the "forfeited" funds in the Settlement Agreement
was merely an afterthought and that there is no reason to treat
the return of fees paid and the residual debit card balances
differently. Specifically, he asserts that the Settlement
Agreement should not provide that the returned fees be

22

automatically deposited into the accounts of class members with active accounts while requiring any class member who seeks the balance of their funds (or any class member with an inactive debit card account) to request a check. Sheib speculates that class members will not seek the disgorgement of their account balances because they are required to submit a claim, resulting in a windfall for Chase. He contends that it would be fairer to simply send checks to the class members for both their fees and their remaining account balances rather than provide the choice of keeping and using the debit card or seeking all funds in a check.

The Court disagrees. Sheib provides no evidence that class members will accept automatic repayment of debit card fees but will not, if they desire, request a check containing both the fees and the residual balance from their accounts. Moreover, the Court finds that providing the class members with alternate ways to obtain their funds (via a check or a debit card) is superior to Sheib's proposition of mailing out only checks in that it gives the class members choice. The prerequisite of filing a claim before receiving a check also serves to safeguard the checks in that it insures that they will be sent to a current valid address.

23

Third, Sheib contends that the settlement is unfair in that the postcard notice and published notice make no mention of class member's rights to receive their residual funds. Sheib is incorrect. The postcard notice and the published notice specifically provide that "[i]f you submit a Claim requesting your Settlement Payment by check, you may also request that the check include any remaining balance on your BOP Card." ECF No. 31 Exh. C.

Finally, Sheib alleges that because Krimes did not conduct discovery or any independent damage analysis regarding the residual balances in each class member's debit card account, the adequacy of the proposed Settlement Agreement cannot be properly evaluated. The Court disagrees that such additional discovery is necessary because the settlement will afford every class member the option to request the entirety of their residual debit card account balance via check. Sheib's discovery request would merely delay the class members from receiving compensation. If the class members choose to receive a check containing the fees they paid and the remaining balances in their account, they will have been fully compensated.

As a result, the Court overrules Sheib's objections and denies his motion for discovery. Simply put, and despite Sheib's objections, this Court finds it difficult to fathom how

24

a settlement that reimburses the class members for all fees paid as well as provides for disgorgement of all funds remaining in their debit card accounts is not fair to the class members. If Sheib believes that the Settlement Agreement is inadequate, he may object again during the appropriate period and may ultimately opt out of the Settlement Agreement to pursue his own claims.

**III.    CONCLUSION**

In that Rules 23(a) and (b)(3), as well as the ascertainability requirement have been met, preliminary certification of the settlement class appears proper. Moreover, the terms in the Settlement Agreement, as well as the forms of notice, appear fair, reasonable and adequate. As a result, the Court will grant Krimes' motion for preliminary approval of the Settlement Agreement, overrule Sheib's objections, and deny his motion for leave to take discovery.

An appropriate order follows.