IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JESSE KRIMES,                          :
                                       :        CIVIL ACTION
on behalf of himself and all           :        NO. 15-5087
others similarly situated,             :
                                       :
          Plaintiff,                   :
                                       :
     v.                                :
                                       :
JPMORGAN CHASE BANK, N.A., et al.,      :
                                       :
          Defendants.                  :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              May 24, 2017


          Presently before the Court are Plaintiffs' Unopposed

Motion for Final Approval of Class Action Settlement and

Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and

Service Awards. After private mediation, Plaintiff, Jesse

Krimes, and Defendant, JP Morgan Chase Bank, have agreed to

settle Krimes' claims that Chase charged unreasonable fees for

the use of a prepaid debit card issued to recently released

prisoners. In short, the settlement fund provides for all debit

card users to obtain a refund of all card service charges and

ATM fees and allows them to obtain any remaining balances from

their account via check. Chase has also agreed to pay from a

separate fund, attorney fees, costs, and a service award.

For the reasons that follow, the Court will grant both motions.

## I.   BACKGROUND

In September of 2013, Krimes was released from federal prison. ECF No. 1 ¶ 27. Upon his release, the Bureau of Prisons ("BOP") provided to him a prepaid Chase debit card pursuant to the U.S. Debit Card program. Id. ¶ 28. The card was loaded with money that Krimes possessed when he was initially incarcerated and funds he accrued while incarcerated. Id.

According to Krimes, if he and the other releasees "want[ed] their own money after they [were] released from prison, they [were] forced to accept a 'consumer relationship' with Chase" and "accept the Chase U.S. Debit Card's terms." Id. ¶¶ 2, 17 (emphasis original). Krimes also contends that Chase charged excessive fees for using the card. Id. ¶¶ 5, 29. For example, card holders were charged for using the card at a bank teller window, using non-network ATMs, checking their account balances, and were charged an inactivity fee. Id. ¶¶ 5-6, 29-30, 35.

Krimes initiated this action on behalf of himself and others similarly situated on September 11, 2015 against Defendants Chase and Does 1-10, alleging unjust enrichment, conversion, and violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Id. ¶¶ 52-60, 86-108. The

Court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d).

On March 31, 2016, the parties filed a joint motion to stay the proceedings pending mediation. ECF No. 27. The Court granted that motion on April 20, 2016. ECF No. 28. The parties engaged a neutral mediator, Jonathan Marks, and had multiple joint and ex parte telephone conferences with him, culminating in an all-day in-person mediation session on May 12, 2016. These negotiations resulted in the present settlement agreement.

On August 1, 2016, Plaintiff filed a motion for preliminary approval of a class action settlement. ECF No. 31. The Court set the hearing to consider the motion for August 30, 2016. ECF No. 32. Before the hearing, a potential class member and plaintiff in his own similar suit, Brett Sheib, filed an objection to Plaintiff's motion. ECF No. 33.

After the September 23, 2016 preliminary approval hearing, ECF No. 42, the Court granted the motion for preliminary approval of the class action settlement and overruled the objection thereto. ECF Nos. 43-44. The Order also set, inter alia, notice procedures, dates for opting in and out of the settlement, and a date for the final approval hearing.

Plaintiff filed his unopposed motions for final approval and for attorneys' fees, costs, and service award on February 20, 2017. ECF Nos. 48-50. On April 12, 2017, the Court

held the final settlement approval hearing.

A. The Proposed Class Action Settlement

The terms of the proposed class action settlement are set forth in the Settlement Agreement and Release ("Settlement Agreement"), ECF No. 31-1, and are outlined below.

1. The Proposed Settlement Class

The Settlement Agreement provides for a settlement class defined as follows:

> All persons in the United States who, up to and including the date of preliminary approval, were issued BOP Debit Cards upon their release from federal correctional facilities as part of the U.S. Debit Card program operated by JPMorgan Chase Bank, N.A. for the United States Treasury Department and the Federal Bureau of Prisons.

ECF No. 31-1 ¶ 43.

2. The Proposed Settlement Terms

The Settlement Agreement provides that Chase will pay up to $446,822 to the settlement class. Id. ¶¶ 45, 71. From this amount, each class member will be entitled to reimbursement of all fees imposed by Chase as well as all third-party ATM surcharges that were incurred on BOP debit cards before the date of preliminary approval. Id. ¶ 71.

Settlement class members who still have active BOP debit card accounts will receive their settlement payments via deposit back into their accounts. Id. ¶ 73. Alternatively, they may choose to receive either a paper check or replacement debit

card at no charge. Id. Class members who no longer possess an active BOP debit card account can request their payment via a paper check. Id. ¶ 75. Any class member requesting a check may also request that it include, in addition to his or her settlement payment, any residual balance in his or her debit card account. Id. ¶ 77.

Notice and claims administration costs have been paid by Chase. Id. ¶ 47. If any of the money remains unclaimed after the initial distribution of payments, Chase will deduct the costs of notice and claims administration before making a supplemental distribution on a pro rata basis. Id. ¶ 76. Chase will also separately pay Plaintiff's requested service award, attorneys' fees, and costs not to exceed $250,000. Id. ¶ 46–47. Specifically, Plaintiff's Counsel has requested $230,312.89 for attorneys' fees, $14,687.11 in costs, and a service award of $5,000 for Krimes. ECF No. 49 at 7.

In exchange for the benefits provided by the settlement, settlement class members agree to release all claims:

> that were or could have been alleged in the Action and
> result from, arise out of, are based upon, or in any
> way relate to Chase's possession of Settlement Class
> Members' funds, or Settlement Class Members' access to
> their funds, as part of the BOP Debit Card Program;
> imposition on Settlement Class Members of Chase Fees
> or ATM Surcharges in relation to the BOP Debit Card
> Program; or any disclosures or other communication to

Settlement Class Members by Chase concerning BOP Debit Cards.

ECF No. 31-1 ¶ 89.

### 3. Class Notice

The parties selected, and the Court approved, Kurtzman Carson Consultants ("KCC") to disseminate notice and handle claims administration. ECF No. 31-1 ¶ 37; see ECF Nos. 43-44 (approving the employment of KCC and the notice program). The notices were designed to apprise the settlement class of their rights: (a) to make claims in the event they wished to elect to receive checks in the amount of their settlement share, and if requested, any residual balances remaining in their debit card accounts, (b) to exclude themselves from the settlement, or (c) to object to the settlement's terms or class counsel's anticipated fee application and request for Krime's service award. See id. ¶¶ 53-68.

The Class Notice program was comprised of: (a) direct mail notice; (b) publication notice in three periodicals; (c) a Settlement Website; (d) a toll-free telephone number; and (e) a long-form notice with more detail than the direct mail or publication notices, which were available on the Settlement Website or upon written or telephonic request. See id. ¶¶ 61, 64-66.

The forms of notice included, inter alia: (a) a description of the settlement; (b) the deadline for class members to make a claim or form-of-payment election, exclude themselves from the settlement class, or object to the settlement; (c) the address of the settlement website; and (d) the number of the toll-free telephone line. Id. ¶¶ 55-60.

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). A district court may approve a settlement agreement only "after a hearing and on finding that it is fair, reasonable, and adequate." Id. When presented with a class settlement agreement, the court must first determine that the requirements for class certification under Rule 23(a) and (b) are met and then must separately determine that the settlement is fair to the class under Rule 23(e). In re Nat'l Football League Players Concussion Injury Litig., 775 F.3d 570, 581 (3d Cir. 2014).

The factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 320 (3d Cir. 2008). "'The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court.'" In re Prudential Ins. Co. Am. Sales

Practice Litig. Agent Actions, 148 F.3d 283, 299 (3d Cir. 1998)

(quoting Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir. 1975)).

Where, as here, the court has not already certified the class

prior to evaluating the settlement, the court must determine

whether the proposed settlement class satisfies the requirements

of Rule 23(a) and (b). Amchem Prods., Inc. v. Windsor, 521 U.S.

591, 619 (1997); In re Pet Food Prods. Liab. Litig., 629 F.3d

333, 341 (3d Cir. 2010).

Under Rule 23(h), at the conclusion of a successful

class action, class counsel may apply to a court for an award of

attorneys' fees. The amount of an attorneys' fee award "is

within the district court's discretion so long as it employs

correct standards and procedures and makes finding of fact not

clearly erroneous[.]" Sullivan v. DB Investments, Inc., 667 F.3d

273, 329 (3d Cir. 2011) (en banc) (internal quotation marks

omitted).

A.    Whether Class Certification Is Proper

At the final fairness stage, the court must undertake

a "rigorous analysis" as to whether class certification is

appropriate. In re Nat. Football League Players, 775 F.3d at

582-83, 586. Under Rule 23(a), Plaintiffs must demonstrate that:

(1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to

the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b)(3), under which Plaintiffs seek class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These twin requirements are commonly referred to as predominance and superiority. Sullivan, 667 F.3d at 296. The Court finds that both the Rule 23(a) and (b)(3) factors are satisfied here.

Finally, in addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement, ascertainabililty of the class, that must be assessed during the Court's preliminary determination on class certification.

1.  Rule 23(a) Factors

a.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs

exceeds forty, the numerosity prong has been met. <u>Stewart v.</u>
<u>Abraham</u>, 275 F.3d 220, 226-27 (3d Cir. 2001).

Numerosity is easily satisfied here as Chase's records
show that there are approximately 64,000 settlement class
members, equaling the number of BOP debit cards issued by Chase
to individuals in the United States since the implementation of
the BOP debit card program.

**b.** <u>Commonality</u>

Rule 23(a)(2) requires the existence of "questions of
law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This
commonality element requires that the plaintiffs "share at least
one question of fact or law with the grievances of the
prospective class." <u>Rodriguez v. Nat'l City Bank</u>, 726 F.3d 372,
382 (3d Cir. 2013). To satisfy the commonality requirement,
class claims "must depend upon a common contention . . . of such
a nature that it is capable of classwide resolution - which
means that determination of its truth or falsity will resolve an
issue that is central to the validity of each one of the claims
in one stroke." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338,
350 (2011).

Commonality exists in this case because all of the
settlement class members' claims stem from a common course of
conduct. Each class member could access their funds upon release
only through a BOP debit card. Each was also subject to the same

fees Chase charged in connection with the cards. Also, Chase's principal defenses, such as government immunity, are common to all class members.

### c. <u>Typicality</u>

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." <u>Baby Neal v. Casey</u>, 43 F.3d 48, 57 (3d Cir. 1994). Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied. <u>In re Warfarin Sodium Antitrust Litig.</u>, 391 F.3d 516, 532 (3d Cir. 2004).

The typicality element is satisfied because Krime's claims are identical to those of the settlement class. He alleges the same type of injury arising out of the same conduct or circumstances to which other settlement class members were exposed. Upon release from prison, Plaintiff and the class members could only access their funds via the BOP debit card and were all subject to the same fees and conditions. Thus,

Plaintiff is well-suited to represent the other settlement class members.

###### d. Adequacy of Representation

Rule 23(a)(4) requires representative parties to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent." Amchem, 521 U.S. at 625. The Third Circuit applies a two-prong test to assess the adequacy of the proposed class representatives. First, the court must inquire into the "qualifications of counsel to represent the class," and second, it must assess whether there are "conflicts of interest between named parties and the class they seek to represent." Prudential, 148 F.3d at 312 (internal quotation marks and citations omitted).

First, class counsel, Golomb & Honik, P.C., has represented to the Court that they have successfully handled at least a dozen national, regional, and statewide class actions, and other complex multi-party actions in both federal and state courts. ECF No. 31-2 ¶¶ 16-17. They also served on the executive committee in the multi-district litigation In re Budeprion XL Sales & Marketing Practices Litigation and currently serve as liaison counsel in the multidistrict litigation In re Benicar (Olmesartan) Litigation. Id. Plaintiffs' counsel litigated this

matter for approximately one year. They opposed Defendant's motion to dismiss, exchanged discovery, and engaged in lengthy negotiations with Defendant through a neutral mediator, which resulted in a successful settlement. The Court concludes that Plaintiff's counsel is well qualified to represent the class.

Second, Krimes' interests are coextensive with, and not antagonistic to, the interests of the settlement class. Krimes and the absent class members have an equal interest in the relief offered by the Settlement Agreement. Also, there is no divergence between Krimes' interests and those of the other class members. Both Krimes' and the other class members' claims arise from the same conduct and they all seek remedies equally applicable and beneficial to them all. The Court concludes that there are no conflicts of interest between Krimes and the class such that the adequacy of representation requirement is met.

In sum, Plaintiff has demonstrated compliance with each of the Rule 23(a) prerequisites for class certification.

### 2. Rule 23(b)(3) Factors

In addition to satisfying each of the prerequisites in Rule 23(a), a class representative must show that the action falls into at least one of the three categories provided in Rule 23(b). Plaintiff brings this action under Rule 23(b)(3). ECF No. 31 at 16. Under Rule 23(b)(3), a class action may be maintained if; (1)common questions of law or fact predominate over

questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. Further, it assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3), Advisory Committee's Note to 1966 Amendment.

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." Warfarin, 391 F.3d at 533-34 (internal quotation marks omitted). When assessing superiority and "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Plaintiff satisfies the predominance requirement because liability questions common to the settlement class substantially outweigh any possible individual issues. Plaintiff's claims and those of the class are based on the same legal theories and same uniform conduct.

Resolution of the claims of the settlement class members is superior to individual law suits because it promotes consistency and efficiency of adjudication. Since the individual claims are relatively small, without the class, individuals might lack incentive to pursue their claims. The Court previously determined that this action was also superior to a competing class action filed on June 6, 2016, captioned Sheib v. JP Morgan Chase & Co., No. 16-cv-2880 (E.D.N.Y.). See In re Community Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005) (discussing the relevance of other individuals' suits in approving a class action settlement, and noting that "these individuals can opt-out and pursue their claims individually"). Specifically, the Court concluded that the proposed class in this action was more inclusive than in Sheib, and the settlement provided more flexible forms of remuneration. See Krimes v. JPMorgan Chase Bank, N.A., No. CV 15-5087, 2016 WL 6276440, at *5–8 (E.D. Pa. Oct. 26, 2016).

Thus, the Court concludes that the class action meets the predominance and superiority requirements of Rule 23(b)(3).

### 3.   Ascertainability

In addition to the Rule 23(a) and (b)(3) requirements, the Third Circuit imposes another requirement under Rule 23: ascertainability. Byrd v. Aaron's Inc.,784 F.3d 154, 163 (3d Cir. 2015). In Byrd, the Third Circuit explained that "[t]he

ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria, and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Id. (internal quotation marks omitted).

The putative class is ascertainable because Defendant, as part of the mediation discovery, has identified the number of BOP debit cards that were issued since the implementation of the BOP debit card program. ECF No. 31-2 ¶ 4. The Court finds that Defendant's records are an objective and reliable means of ascertaining the class members.

Based on the above, the settlement class satisfies the requirements of Rule 23(a) and (b)(3), as well as the Third Circuit's ascertainability requirement. Therefore, the Court will certify the class for the purposes of this settlement.

B.    Whether the Notice to the Class Members Was Adequate

Having determined that the class may be certified, the Court next reviews the notice procedures implemented by plaintiffs. "In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." Prudential,

148 F.3d at 306. Rule 23 includes two provisions concerning notice of the class members.

First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts. Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members. Fed. R. Civ. P. 23(c)(2)(B).

Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement. Fed. R. Civ. P. 23(e)(1). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." Prudential, 148 F.3d at 327 (internal quotation marks omitted).

In the Court's memorandum and order granting preliminary approval of the settlement, the Court approved notice by direct mail, periodical publication, a settlement-

specific website, and a toll-free telephone number. At that time, the Court reviewed the parties' notice program, including the language of the notices and found that they were clear, included all requisite information, and met the requirements of Rule 23(c)(2)(B) and (e). Krimes, 2016 WL 6276440, at *7.

Plaintiff reports that, through direct mailings, KCC was able to reach 90.15% of the 19,414 Class Members for whom valid non-correctional facility addresses were found. ECF No. 48-2 ¶¶ 2-3. When notices were returned as undeliverable, the information was processed through the Accurint address search service which provided 2,082 updated addresses. Id. Plaintiff also reports that the Court-approved notice was published in USA Today, ESPN The Magazine, and People. Id. ¶ 2. Plaintiff further reports that there have been 1,645 unique visitors to the website and the toll-free number received 982 calls. Id. ¶4.

Accordingly, the Court finds that the notice program used in this case satisfies Rule 23(c)(2)(B) and (e) and was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, the class members' rights to opt out or to object, and the applicability of a final judgment on all participating class members. Fed. R. Civ. P. 23(c)(2)(B); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173 (1974).

C.   Whether the Proposed Settlement Is Proper

After class certification, the court must approve the settlement of a class action and determine whether the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). Prudential, 148 F.3d at 316-17. Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires "'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." Id. at 317 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995). This heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members. Id. Ultimately, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh, 521 F.2d at 156.

In Girsh, the Third Circuit Court identified nine factors to be considered when determining the fairness of a proposed settlement: (1) the complexity, expense, and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of

the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.3d at 157. The Court addresses the Girsh factors below - some individually, some together as a group - before separately addressing the class representative's service award and the attorneys' fees and costs.

      1.   The Complexity, Expense, and Likely Duration of the Litigation

The first Girsh factor is the complexity, expense, and likely duration of the litigation, which aims to take into account the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 233 (3d Cir. 2001) (internal quotation marks omitted).

Plaintiff contends that continued litigation would be lengthy and costly since the parties would need to conduct: (1) discovery and briefing on Chase's immunity defenses; (2) fact discovery for any remaining claims; and (3) class certification discovery and briefing. The Court agrees with the parties that the settlement, which provides substantial and immediate benefits to the class, is far superior than protracted

litigation and appeals. Thus, this factor weighs in favor of settlement.

### 2.    The Reaction of the Class to Settlement

The second Girsh factor to be considered is the reaction of the class to the settlement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." Gen. Motors, 55 F.3d at 812.

Only one settlement class member, Brett Sheib, has elected to opt-out of the settlement. Moreover, apart from the objection he lodged during the Preliminary Approval stage, there have been no other objections. ECF No. 48-2 ¶¶6-7. Thus, this factor also weighs heavily in favor of the settlement. See, e.g., Prudential, 148 F.3d at 318 (affirming district court's conclusion that class reaction was favorable when 19,000 out of 8,000,000 class members opted out and 300 objected); Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118–19 (3d Cir. 1990) (noting that the second Girsh factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms).

### 3.    The Stage of the Proceedings

The third factor to be considered is the stage of the proceedings and the amount of discovery completed. This Girsh factor requires the Court to evaluate whether Plaintiffs had an

"adequate appreciation of the merits of the case before negotiating" settlement. Prudential, 148 F.3d at 319 (internal quotation marks omitted).

Here, the settlement was finalized only after a rigorous mediation during which the parties engaged in analysis of the substantive claims and defenses in the case. Moreover, the case has been pending since September 2015 and the parties have briefed a motion to dismiss which afforded Plaintiff an opportunity to assess the strengths and weaknesses of the case. The Court concludes that this factor has been met and that the parties sufficiently appreciated the merits and dangers of the case.

### 4.   The Risks of Continued Litigation

The fourth, fifth, and sixth Girsh factors are the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class action throughout the trial. These factors balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." Prudential, 148 F.3d at 319. As to the risks of establishing liability, this factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." Gen. Motors, 55 F.3d at 814. As to damages, this factor "attempts to measure the

expected value of litigating the action rather than settling it at the current time." Cendant Corp., 264 F.3d at 238-39 (quoting Gen. Motors, 55 F.3d at 816). Finally,

> [b]ecause the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action, this factor [concerning the risks of maintaining the class action through trial] measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial.

Warfarin, 391 F.3d at 537 (internal quotation marks and citations omitted).

As discussed above, the parties have had sufficient opportunity to evaluate the strengths and weaknesses of the case – which includes – the risks of continuing the litigation. But for the settlement, Defendant would have offered defenses that could have precluded any award to the class members. Moreover, both sides would have faced risks in battling motions for summary judgment and possibly trial and appeal. Similarly, there are uncertainties regarding full class certification. In that much of the substantive discovery and motions practice is avoided by the settlement, it is unlikely that the class members would be better served with continuing the litigation rather than accepting a settlement in which they receive a full refund of all of the fees and surcharges levied and the opportunity to

obtain the entire balance in their account via check. Thus, these factors weigh in favor of the settlement.

### 5. The Ability of the Defendant to Withstand Greater Judgment

The seventh factor regards the ability of the defendant to withstand a greater judgment. This factor is "most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." Reibstein v. Rite Aid Corp., 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011).

Chase is capable of withstanding a much larger judgment. However, the class members are also being given an opportunity to recoup all of their alleged losses. The Court finds that this factor does not weigh heavily for or against the settlement. See, e.g., In re: Processed Egg Prod. Antitrust Litig., No. 08-MD-2002, 2016 WL 3584632, at *16 (E.D. Pa. June 30, 2016) ("Even if the Court were to presume that the defendants' resources far exceeded the settlement amount, in light of the balance of the other factors considered which indicate the fairness, reasonableness, and adequacy of the settlement, the ability of the defendants to pay more, does not weigh against approval of the settlement.").

6. The Range of Reasonableness of the Settlement
in Light of the Best Possible Recovery and the
Attendant Risks of Litigation

The eighth and ninth factors are the range of
reasonableness of the settlement fund in light of the best
possible recovery and the attendant risks of litigation. These
factors examine "whether the settlement represents a good value
for a weak case or a poor value for a strong case." Warfarin,
391 F.3d at 538.

As the Court has stated previously, indisputably, the
class members are getting significant value from the settlement
in the form of a refund of all debit card fees, all ATM
surcharges, and the ability to obtain any balance on their card
via check. The Court concludes that these two factors also weigh
in favor of the settlement.

It is clear that upon balancing of the Girsh factors,
they tip strongly in favor of the settlement. Thus, the Court
finds the settlement fair and will approve the Settlement
Agreement.

D. Attorneys' Fees, Costs, and the Service Award

In the Settlement Agreement, Chase agreed to pay
attorneys' fees, costs, and a service award of up to $250,000.
ECF No. 31-1 ¶ 46. These items are to be paid separately from
the settlement proceeds. Id. ¶¶ 45-46. In their motion for fees,
Plaintiff's counsel has requested: (1) $230,312.89 in attorneys'

fees; (2) $14,687.11 in costs; and (3) a $5,000 service award
for Krimes.

When class counsel successfully settles a class
action, they may apply for reasonable attorneys' fees and
nontaxable costs. Fed. R. Civ. P. 23(h). "[A] thorough judicial
review of fee applications is required in all class action
settlements." Gen. Motors, 55 F.3d at 819. The amount of the fee
award "is within the district court's discretion so long as it
employs correct standards and procedures and makes finding of
fact not clearly erroneous[.]" Sullivan, 667 F.3d at 329
(internal quotations and citation omitted).

Plaintiff's counsel has reported that it billed 478.3
hours with a total value of $236,355. Specifically they report
that: (1) founding partner Ruben Honik expended 137.4 hours at a
rate of $750 per hour; (2) partner Kenneth J. Grunfeld expended
50 hours at $450 per hour; (3) associate David J. Stanoch
expended 270.7 hours at $400 per hour; and (4) paralegal
Elizabeth C. Malloy expended 20.2 hours at $125 per hour. ECF
No. 49-1 ¶¶ 29-33. The average hourly rate comes to $494 per
hour.

In that attorneys' fees are not being paid from a
common fund, the use of the loadstar method is appropriate. "The
lodestar method is 'designed to reward counsel for undertaking
socially beneficial litigation in cases where the expected

relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." In re Diet Drugs, 582 F.3d 524, 540 (3d Cir. 2009) (quoting Prudential, 148 F.3d at 333). "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." In re Rite Aid Corp. Secs. Litig., 396 F.3d 294, 305 (3d Cir. 2005). The lodestar is then subject to a multiplier. See, e.g., id.; Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp., 540 F.2d 102, 117 (3d Cir. 1976).

The Court concludes that given the scope and complexity of the litigation including the time spent on pre-litigation investigation and research, motions practice, and mediation, that the hours spent by counsel are reasonable. See ECF No. 49-1 ¶ 36.

The Court further concludes that the hourly rates charged by Plaintiff's counsel, and which average $494 per hour, are "reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys." In re AT&T Corp. Secs. Litig, 455 F.3d 160, 164 (3d Cir. 2006) (internal quotations and citations omitted); see, e.g., Moore v. GMAC Mortg., No. 07-4296, 2014 WL 12538188, at *2

27

(E.D. Pa. Sept. 19, 2014) (finding reasonable rates between $325 and $860 per hour); In re Merck & Co., Inc. Vytorin Erisa Litig., No. 08-285DMC, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour).

The loadstar in this case is $236,355. In that Plaintiff's counsel seeks slightly less in fees than it expended (230,312.89) the load multiplier is negative, further indicating that the fees requested are reasonable. See In re Cendant Corp. Prides Litig., 243 F.3d 722, 742 (3d Cir. 2001) ("[m]ultipliers ranging from one to four are frequently awarded") (internal quotations and citation omitted). The Court concludes that, based upon the loadstar method, the attorneys' fees requested are reasonable.

Plaintiff's counsel also reported that the $14,687.11 in costs arose from standard categories including travel and meals ($24), copying costs ($1,137), postage/shipping ($6.40), filing fees ($400), service of documents ($105), research ($2,214.71), and mediation fees ($10,800). ECF No. 49-1 ¶35. The Court concludes that these fees are reasonable.

Finally, class counsel seeks a service award for Krimes of $5,000. Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation and [ ] reward the public service of contributing to the enforcement of

mandatory laws." Sullivan, 667 F.3d at 333 n.65 (internal quotation marks omitted).

According to Krimes he sought out and obtained counsel after being unable to get a satisfactory answer from Chase regarding the fees that he was being charged. ECF No. 53-1 ¶¶ 4-9. Krimes asserts that he worked closely with his counsel and provided documentation and explanations regarding his debit card, communicating with them over many weeks in person and via telephone and email. Id. ¶¶ 10-11. He also gathered additional information from social justice groups for his counsel. Id. ¶ 11. Krimes claims he was actively involved in the case and estimates that he spent a total of fifty to seventy hours assisting his counsel. Id. ¶¶ 12-16.

Krimes also asserts that he was concerned about negative publicity, embarrassment, stigma, and unwanted attention that might result from his position as the lead plaintiff in a case regarding previously incarcerated individuals. Id. ¶ 19. Krimes contends that he has received negative comments about himself and his work related to his incarceration. Id. ¶¶ 22-25.

Krimes' counsel confirms these contentions and asserts that Krimes' assistance with the case was substantial. ECF No. 53-2. There have been no objections to the award. As a result, the Court concludes that the service award is reasonable.

## III. CONCLUSION

The Court again finds that the requirements for class certification under Rule 23 have been met for settlement purposes. The Court further concludes that the Settlement Agreement is fair, reasonable, and adequate and, thus, will approve it. Finally, the Court finds that the requests for counsels' fees and costs, and Krimes service award are reasonable. As a result, the Court will grant Plaintiff's unopposed motions for final approval of settlement and for attorneys' fees, costs, and service award.

An appropriate order follows.